**Matthew S. Parmet** (CSB # 296742)
matt@parmet.law
**PARMET PC**
340 S. Lemon Ave., #1228
Walnut, CA 91789
phone  713 999 5228
fax      713 999 1187

**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROY CABANEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ASSIST ON CALL, INC.,<br><br>Defendant. | Case No. 3:20-cv-09470<br><br>**Plaintiff's Original Class and Collective Action Complaint for Damages**<br><br>1. Failure to pay overtime compensation (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*)<br>2. Failure to pay wages (CAL. LAB. CODE §§ 510, 1194, 1194.5; IWC Wage Orders)<br>3. Failure to provide compensation for missed meal and rest periods (CAL. LAB. CODE §§ 226.7, 512; IWC Wage Orders)<br>4. Violations of record keeping requirements (CAL. LAB. CODE § 226)<br>5. Waiting time penalties (CAL. LAB. CODE § 203)<br>6. Violation of Unfair Competition Law (CAL. BUS. & PROF. CODE §§ 17200, *et seq.*)<br>7. Civil penalties under the Private Attorneys General Act of 2004 (CAL. LAB. CODE §§ 2698, *et seq.*) |

## SUMMARY

1. Roy Cabanez brings this lawsuit to recover unpaid overtime wages and other damages owed by Assist on Call, Inc.

2. Cabanez and other hourly workers for Assist on Call regularly worked in excess of 8 hours in a day and 40 hours in a week.

3. But Assist on Call did not pay Cabanez and the other workers the proper overtime rate for all of these hours.

4. Instead, Assist on Call paid Cabanez and the other workers the same hourly rate, even when they should have received an overtime premium.

5. Further, Assist on Call did not provide required meal and rest periods to Cabanez and the other workers, as mandated by California law.

6. This action seeks to recover the unpaid overtime wages and other damages owed by Assist on Call to these workers.

## JURISDICTION & VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

8. This Court has original jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d).

9. The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Asssist on Call resides in this District.

11. Cabanez worked for Assist on Call in this District.

12. Therefore, venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**INTRADISTRICT ASSIGNMENT**

13. A substantial part of the events or omissions giving rise to the claim occurred in Alameda County, California.

14. This matter is therefore properly assigned to the District's San Francisco or Oakland Divisions. Civ. L.R. 3-2(d).

**PARTIES**

15. Cabanez was, at all relevant times, an employee of Assist on Call.

16. Cabanez was an hourly employee of Assist on Call.

17. Cabanez began working for Assist on Call in April 2020.

18. Cabanez's written consent is attached as Exhibit A.

19. Cabanez represents at least two classes of similarly situated Assist on Call workers.

20. Cabanez represents a class of similarly situated hourly employees under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Class" is defined as:

> **All current or former hourly employees of Assist on Call, Inc. working in the United States who were, at any point in the past three years, paid "straight time for overtime."**

21. Cabanez represents a class of similarly situated hourly employees under California law pursuant to Federal Rule of Civil Procedure 23. This "California Class" is defined as:

> **All current or former hourly employees of Assist on Call, Inc. working in California who were, at any point in the past four years, paid "straight time for overtime."**

22. Together, throughout this Complaint, the FLSA Class members and California Class members are referred to as the "Putative Class Members."

23. Assist on Call is a California corporation.

24. Assist on Call's headquarters and principal place of business is in Alameda County, California.

25. Assist on Call may be served by service upon its registered agent, **Terry Cruz, 1325 Rhone Pl., Pleasanton, CA 94566**, or by any other method allowed by law.

## COVERAGE UNDER THE FLSA

26. Assist on Call was an employer of Cabanez within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

27. Assist on Call was and is an employer of the Putative Class Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

28. Assist on Call was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

29. During at least the last three years, Assist on Call has had gross annual sales in excess of $500,000.

30. Assist on Call was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

31. Assist on Call employs many workers, including Cabanez, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

32. The goods and materials handled, sold, or otherwise worked on by Isaacs, and other Total Trucking employees and that have been moved in interstate commerce include, but are not limited to, prescription and non-prescription medical supplies and equipment, and pharmaceuticals.

## FACTS

33. Assist on Call supplies in-home caregivers and caregiving services to its clients.

34. Cabanez began working for Assist on Call in April 2020.

35. Cabanez was employed as a caregiver providing in-home services to Assist on Call's clients.

36. Cabanez was an hourly employee of Assist on Call.

37. Assist on Call never paid Cabanez a salary.

38. Assist on Call never paid Cabanez on a fee basis.

39. Assist on Call paid Cabanez by the hour.

40. Assist on Call paid Cabanez $20 per hour.

41. Cabanez reported the hours he worked to Assist on Call on a regular basis.

42. Cabanez's hours are reflected in Assist on Call's records.

43. Assist on Call paid Cabanez at the same hourly rate for all hours worked, including those in excess of 8 in a day.

44. Assist on Call paid Cabanez at the same hourly rate for all hours worked, including those in excess of 40 in a week.

45. Cabanez normally worked more than 8 hours in a day.

46. Cabanez normally worked more than 40 hours in a week.

47. For example, for the two-week period ending May 22, 2020, Cabanez worked 112 hours for Assist on Call.

48. For that pay period, Assist on Call paid Cabanez at his hourly rate of $20 per hour for all 112 hours worked.

49. Likewise, for example, on Cabanez worked for Assist on Call for 16 hours on November 13, 2020.

50. For all 16 hours worked on November 13, 2020, Assist on Call paid Cabanez $20 per hour.

51. Thus, rather than receiving time-and-a-half as required by the FLSA for all hours over 40 in a workweek, Cabanez only received "straight-time" pay for overtime hours worked.

52. This "straight-time-for-overtime" payment scheme violates the FLSA.

53. And rather than receiving an overtime premium as required by California law for all hours over 8 in a day or 40 in a week, Cabanez only received "straight-time" pay for overtime hours worked.

54. Assist on Call was well aware of the overtime requirements of the FLSA.

55. Assist on Call was well aware of the overtime requirements of California law.

56. Assist on Call nonetheless failed to pay certain hourly employees, such as Cabanez, overtime.

57. Assist on Call's failure to pay overtime to these hourly workers was, and is, a willful violation of the FLSA.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

58. Assist on Call's illegal "straight time for overtime" policy extends well beyond Isaacs.

59. It is the "straight time for overtime" payment plan that is the "common policy or plan that violate[s] the law." (*McDonald v. Ricardo's on the Beach, Inc.*, No. CV 11-93366 PSG (MRWx), 2013 WL 228334, at *2 (C.D. Cal. Jan. 22, 2013) [internal quotations omitted].)

60. Assist on Call has paid numerous hourly workers according to the same unlawful scheme.

61. Numerous employees have been victimized by this pattern, practice, and policy, which is a willful violation of the FLSA and California law.

62. Thus, from Cabanez's observations, he is aware that the illegal practices or policies of Assist on Call have been imposed on a distinct group of hourly employees.

63. These employees were all paid straight time for overtime.

64. These hourly employees are victims of Assist on Call's unlawful compensation practices and are similarly situated to Cabanez in terms of pay provisions and employment practices.

65. Assist on Call's failure to pay wages and overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies and practices, which are not dependent on the personal circumstances of the day rate employees.

66. Thus, Cabanez's experiences are typical of the experiences of the Putative Class Members he seeks to represent.

67. The specific job titles or precise job locations of the various hourly employees does not prevent collective treatment.

68. Cabanez has no interests contrary to, or in conflict with, the members of the FLSA or California Classes. Like each member of the proposed classes, Cabanez has an interest in obtaining the unpaid overtime wages owed under state and federal law.

69. A class and collective action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

70. Absent this action, many FLSA and California Class members likely will not obtain redress of their injuries and Assist on Call will reap the unjust benefits of violating the FLSA and California law.

71. Furthermore, even if some of the FLSA and California Class members could afford individual litigation against Assist on Call, it would be unduly burdensome to the judicial system.

72. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

73. The questions of law and fact common to each of the FLSA and California Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether Assist on Call employed the FLSA and California Class members within the meaning of the FLSA and California law;

    b. Whether the FLSA and California Class Members were exempt from overtime;

    c. Whether Assist on Call's decision to not pay overtime to the FLSA Class members was made in good faith; and

    d. Whether Assist on Call's violation of the FLSA was willful.

74. Cabanez's claims are typical of the FLSA and California Class members. Cabanez, and the FLSA and California Class members have all sustained damages arising out of Colonial's illegal and uniform employment policy.

75. Cabanez knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

76. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

77. All the Putative Class Members, regardless of their precise job requirements or rates of pay, are entitled to be properly compensated for all overtime hours. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

### First Cause of Action—Violation of the FLSA

78. Cabanez incorporates each other allegation.

79. Colonial has violated, and is violating, section 7 of the FLSA, 29 U.S.C. § 207, by compensating employees at a day rate in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating the FLSA Class members for their employment in excess of 40 hours per week at rates no less than 1.5 times the regular rates for which they were employed.

80. Assist on Call knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Class members overtime compensation.

81. Assist on Call's failure to pay overtime compensation to these FLSA Class members was neither reasonable, nor was the decision not to pay overtime made in good faith.

82. Accordingly, Cabanez and the FLSA Class members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

### Second Cause of Action—Failure to Pay Wages Under California Law

83. Cabanez incorporates each other allegation.

84. The California Labor Code requires that all employees, including Cabanez and the California Class, receive 1.5 times their hourly rate as overtime premium compensation

for hours worked over eight in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through #17-2001.

85. Despite working over 8 hours a day as part of their normal and regular shift, Cabanez and the California Class did not receive any overtime compensation for all hours worked over eight in one day.

86. The California Labor Code also requires that all employees, including Cabanez and the California Class, receive two times the overtime premium compensation for hours worked over 12 in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through #17-2001.

87. Although Cabanez and the California Class occasionally worked over 12 hours in one day, they did not receive the "double time" compensation required by California law.

88. The California Labor Code requires that all employees, including Cabanez and the California Class, receive two times the overtime premium compensation for hours worked over 8 in one day, in the seventh day of a workweek. CAL. LAB. CODE §§ 510, 551–52 (2017); IWC Wage Orders #1-2001 through #17-2001.

89. Although Cabanez and the California Class regularly worked seven days a week, for at least 12 hours a day, they did not receive the "double time" compensation required by California law for all hours over eight worked on the seventh day.

90. This pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation is unlawful and entitles Cabanez and the California Class to recover unpaid balance of the full amount of overtime wages owing, including liquidated damages, interest, attorneys' fees, and costs of suit pursuant to California Labor Code section 1194.

### THIRD CAUSE OF ACTION—FAILURE TO PROVIDE COMPENSATION FOR MISSED MEAL AND REST PERIODS

91. Cabanez incorporates each other allegation.

92. In accordance with the mandates of California Labor Code sections 226.7 and 512, and applicable IWC Wage Orders, Cabanez and the California Class had the right to

take two uninterrupted 30-minute meal periods for each day they worked 10 hours per day and a 10 minute rest period for every four hours worked per day. CAL. LAB. CODE §§ 226.7, 512; IWC Wage Orders #1-2001 through #17-2001.

93. Although the California Labor Code requires that all employees, including Cabanez and the California Class, receive two, 30-minute meal-period breaks when employed for 10 hours per day, Cabanez and the California Class did not receive two meal-period breaks for each day worked, despite working shifts of 12 hours or more. CAL. LAB. CODE § 512; IWC Wage Orders #1-2001 through #17-2001.

94. As a pattern and practice, Assist on Call did not provide Cabanez and the California Class with meal-period breaks, and did not provide proper compensation for this failure as required by California law.

95. Although the California Labor Code requires that all employees, including Cabanez and the California Class, receive a 10-minute rest period for every four hours worked, Cabanez and the California Class did not receive any rest periods during their shifts of 12 or more hours. CAL. LAB. CODE § 512; IWC Wage Orders #1-2001 through #17-2001.

96. As a pattern and practice, Assist on Call did not provide Cabanez and the California Class with rest-period breaks, and did not provide proper compensation for this failure as required by California law.

97. Cabanez and the California Class are entitled to receive compensation, at their regular rate of pay, of one hour for each day they were denied their lawfully required meal- and rest-periods. CAL. LAB. CODE § 512; IWC Wage Orders #1-2001 through #17-2001.

98. Assist on Call's policy failed to provide Cabanez and the California Class with the legally mandated meal period breaks. Such a pattern, practice, and uniform administration of corporate policy as described herein is unlawful and creates an entitled to recovery by Cabanez and the California Class in a civil action, for the balance of the unpaid compensation pursuant to Labor Code sections 226.7 and 512, and applicable IWC Wage Orders.

**FOURTH CAUSE OF ACTION—VIOLATIONS OF RECORD KEEPING REQUIREMENTS**

99. Cabanez incorporates each other allegation.

100. California Labor Code section 226 requires Assist on Call to keep accurate records regarding the rates of pay for their California employees and provide that information to Cabanez and the California Class with their wage payment.

101. Because Assist on Call failed to pay Cabanez and the California Class lawful wages, it did not maintain accurate records of Cabanez and the California Class's daily hours, gross wages earned, net wages earned, and the applicable hourly rates, and did not provide that information to Cabanez and the California Class with their wages.

102. This pattern, practice, and uniform administration of corporate policy is unlawful and entitles Cabanez and the California Class to recover all damages and penalties available by law, including interest, penalties, attorney fees, and costs of suit. CAL. LAB. CODE § 226(e).

### FIFTH CAUSE OF ACTION—WAITING TIME PENALTIES

103. Cabanez incorporates each other allegation.

104. At all relevant times, Assist on Call was required to pay Cabanez and the California Class all wages owed in a timely fashion at the end of employment pursuant to California Labor Code sections 201 to 204.

105. As a result of Assist on Call's alleged California Labor Code violations, Assist on Call regularly failed to pay Cabanez and the California Class their final wages pursuant to California Labor Code sections 201 to 204, and accordingly Assist on Call owes waiting time penalties pursuant to California Labor Code section 203.

106. The conduct of Assist on Call, in violation of Cabanez and the California Class' rights, was willful and was undertaken by the agents, employees, and managers of Assist on Call.

107. Assist on Call's willful failure to provide Cabanez and the California Class the wages due and owing them upon separation from employment results in a continuation of wages up to 30 days from the time the wages were due.

108. Therefore, Cabanez and the California Class members who have separated from employment are entitled to compensation pursuant to California Labor Code section 203.

### SIXTH CAUSE OF ACTION—VIOLATION OF UNFAIR COMPETITION LAW

109. Cabanez incorporates each other allegation.

110. Assist on Call has engaged, and continues to engage, in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above by knowingly denying employees: (1) overtime wages required under federal law; (2) overtime wages required by California law; (3) meal- and rest-period break wages; (4) accurate wage statements; and (5) waiting time penalties.

111. As a result of Assist on Call's failure to comply with federal and state law, Assist on Call has also violated the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et. seq.*, which prohibits unfair competition by prohibiting any unlawful or unfair business actions or practices.

112. The relevant acts by Assist on Call occurred within the four years preceding the filing of this action.

113. On information and belief, Assist on Call has engaged in unlawful, deceptive, and unfair business practices, pursuant to California's Business and Professions Code section 17200, *et seq.*, including those set forth above, depriving Cabanez and the California Class of minimum working condition standards and conditions under California law and IWC Wage Orders as set forth above.

114. Cabanez and the California Class are entitled to restitution for at least the following: restitution for unpaid overtime wages and unpaid California Labor Code § 203 continuation wages.

115. Cabanez and the California Class are also entitled to permanent injunctive and declaratory relief prohibiting Assist on Call from engaging in the violations and other misconduct referred to above.

116. Assist on Call is also liable for fees and costs pursuant to California Code of Civil Procedure section 1021.5 and other applicable law.

### SEVENTH CAUSE OF ACTION—CIVIL PENALTIES UNDER PAGA

117. Cabanez incorporates all other allegations.

118. Cabanez and the California Class are aggrieved employees within the meaning of California Labor Code section 2699.

119. As aggrieved employees, Cabanez and the California Class seek to recover of civil penalties against Assist on Call pursuant to the Private Attorneys General Act of 2004 (PAGA), CAL. LAB. CODE §§ 2698, *et seq.*

120. Assist on Call has knowingly and intentionally violated the California Labor Code and IWC Wage Orders, including by:

   a. Failing to pay wages (CAL. LAB. CODE §§ 510, 1194, 1194.5; IWC Wage Orders #1-2001 through #17-2001);
   b. Failing to provide compensation for missed meal and rest periods (Cal. Lab. Code §§ 226.7, 512; IWC Wage Orders #1-2001 through #17-2001);
   c. Violating record keeping requirements (CAL. LAB. CODE § 226);
   d. Unlawfully collecting, receiving, or withholding wages (CAL. LAB. CODE §§ 221, 225.5);
   e. Failing to pay wages promptly following termination of employment, or when due and payable (CAL. LAB. CODE § 203).

121. The civil penalties sought by Cabanez and the California Class include the recover of amounts specified in the respective sections of the California Labor Code, and if not specifically provided, those penalties under section 2699(f).

122. Cabanez and the California Class seek the full amounts sufficient to recover unpaid wages, other damages, and necessary expenditures or losses incurred by Cabanez and the California Class pursuant to California Labor Code sections 210, 225.5, 226.3, 226.8, 558(a), 1197(a), 2802, and 2699.

123. Cabanez and the California Class will allege any additional violations of the California Labor Code and IWC Wage Orders as may be disclosed in discovery and as a result of additional investigation that may be pursued in this action.

124. Cabanez provided notice to SoCalGas of its California Labor Code and IWC Wage Orders violations on December 30, 2020.

125. On the same date, Cabanez submitted notice to the California Labor and Workplace Development Agency (LWDA) as required by PAGA.

126. Cabanez's notice to Assist on Call and the LWDA advises each of them of his intent to prosecute a private enforcement action to assess and recover civil penalties under PAGA if the LWDA declines to investigate or prosecute the asserted California Labor Code and IWC Wage Orders violations.

127. If the LWDA declines to investigate or prosecute, Cabanez and the California Class will pursue their PAGA claims in the course of this action.

128. Cabanez and the California Class had to retain counsel to file this action to protect their interests and to assess and collect the civil penalties owed by Assist on Call.

129. Cabanez and the California Class have incurred attorneys' fees and costs in prosecuting this action to recover under PAGA.

### RELIEF SOUGHT

130. Cabanez prays for judgment against Assist on Call as follows:
   a. For an order certifying a collective action for the purposes of claims under the FLSA;
   b. For an order certifying a class action for the purposes of the claims under California law;
   c. For an order finding Assist on Call liable for violations of state and federal wage laws with respect to Cabanez and all class members covered by this case;
   d. For a judgment awarding all unpaid wages, liquidated damages, and penalty damages, to Cabanez and all class members covered by this case;

|   |   |    |   |
|---|---|----|---|
| 1 |   | e. | For a judgment awarding costs of this action to Cabanez and all class members covered by this case; |
| 3 |   | f. | For a judgment awarding attorneys' fees to Cabanez and all class members covered by this case; |
| 5 |   | g. | For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Cabanez and all class members covered by this case; and |
| 8 |   | h. | For all such other and further relief as may be necessary and appropriate. |

Date: <u>December 31, 2019</u>

Respectfully submitted,

**PARMET PC**

By: */s/ Matthew S. Parmet*
    **Matthew S. Parmet**

**Attorneys for Plaintiff**